THE HAMILTON PROVIDENT & LOAN SOCIETY v. WILLIAM NORTHWOOD.

*Mortgage—Evidence—Admissions of attorney—Burden of proof.*

1. In a suit to recover the amount secured by a Canadian mort-gage, under which, in case of default, the mortgagee was authorized to sell the land at private sale without notice, a summons issued by the solicitors for the plaintiff in a former suit in Canada, and served upon the defendant, with a statement of the particulars of plaintiff's claim, from which it appeared that the action was brought to recover the same indebtedness, less a specified sum received on the sale of the land, is competent evidence tending to show such sale, and that the defendant is entitled to credit for the sum realized thereon.

2. In such a case the defendant is entitled to have the papers go to the jury as admissions by the plaintiff of such sale, and it becomes the duty of the plaintiff to prove that the admissions were made by mistake, or without authority on the part of the solicitors to make them, and that in fact no sale had been made.

3. The fact of such non-sale cannot be established by showing two attempts to make a sale of the land when the witness was present, and the withdrawal of the land because of the inade-

quacy of the bids, and that, three months before the trial at which he testifies, he examined the books of the plaintiff, and found that there had been no sale made, such testimony being incompetent.

Error to Wayne. (Reilly, J.) Argued May 13, 1891. Decided June 5, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Marston, Cowles & Jerome (H. E. Spalding,* of counsel), for appellant, contended:

1. It was shown by the testimony of a Canadian barrister that, by Canadian law, if the mortgaged premises had been sold, the plaintiff could not maintain an action of this kind. A defense or discharge good where the contract is made is good everywhere; citing *Bissell v. Lewis,* 4 Mich. 440; *Iron Co. v. Burkam,* 10 Id. 283; *Holdridge v. Bank,* 16 Id. 66; *Palmer v. Mason,* 42 Id. 146; 3 Amer. & Eng. Enc. Law, 579.

2. The summons and other papers were admissible, because the declarations of an agent, made within the scope of his authority and relating to the subject-matter of his agency, are always regarded as standing on the same footing as those of his principal; citing *Benedict v. Denton,* Walk. Ch. 336; *Fur Co. v. U. S.,* 2 Pet. 358, 364; *Gordon v. Parmelee,* 2 Allen, 212; and the fact that the handwriting on two of the exhibits is that of the clerk is immaterial. The papers emanated from the attorneys' office; citing *Taylor v. Willans,* 2 Barn. & Adol. 845, 856; *Standage v. Creighton,* 5 Car. & P. 486; *Taylor v. Forster,* 2 Id. 195; *Griffiths v. Williams,* 1 T. R. 710.

*Bowen, Douglas & Whiting,* for plaintiff, contended:

1. If a party amends his pleading, stating the facts differently, he would reap no benefit from his amendment if the adverse party were at liberty to use the first pleading as an admission to overthrow the amended pleading; citing *Mecham v. McKay,* 37 Cal. 165; and this rule applies with greater force to pleadings in suits which have been discontinued.

2. The amendment of a pleading is an acknowledgment by the pleader that he is mistaken, not that he willfully made a false statement; citing *Manufacturing Co. v. Campbell,* 13 Abb. Pr. 86.

3. The functions of a former pleading are at an end when amended by the filing of a new pleading, and it is not error to refuse to allow the original pleading to be read to the jury; citing *Machine Co. v. Pierce*, 5 Mo. App. 575; *Smith v. Davidson*, 41 Fed. Rep. 172; *Dennie v. Williams*, 135 Mass. 28.

4. A former complaint, not under oath nor signed by the plaintiff, but only by its attorneys, is clearly incompetent to prove an admission by the plaintiff that upon these facts it has no cause of action against the defendant; citing *Commissioners v. Safe Co.*, 133 U. S. 473; *Nichols, Shepard & Co. v. Jones*, 32 Mo. App. 664.

5. Admissions of facts by an attorney in one action are not admissible in evidence against the client in another action, unless acquiesced in by him; citing 1 Phil. Ev. 508; *Anderson v. McAleenan*, 8 N. Y. Supp. 483; *Wilkins v. Stidger*, 22 Cal. 239.

MORSE, J.    July 11, 1882, F. Marx, a resident of Chatham, Ontario, sold and conveyed to the defendant, Northwood, a piece of land known as "Part of Block B, on King street, in Chatham." The consideration of this sale was $5,000, and the deed contained a covenant that Northwood should have quiet possession of the premises, free from all incumbrances.

Before this Marx had given a mortgage, covering this and other lands, to the Merchants' Bank of Canada for $43,500. Northwood, at the time of the sale, executed to the said Merchants' Bank a mortgage upon the land for $5,000, in payment of the purchase price of said land. This mortgage contains, among others, the following covenants:

1. That the mortgagor will pay the mortgagee the sum of $5,000, with interest at six per cent. per annum.

2. That the mortgagor has a good title in fee-simple to the lands, and has the right to convey them; and that on default the mortgagee shall have quiet possession of the premises, free from all incumbrances.

It also contains a proviso—

"That the said mortgagee, on default of payment for one month, may, on giving one month's notice, enter on

and lease or sell the said lands: *Provided*, further, that in case default be made in the payment of said principal or interest, or any part thereof, for three months after the same became payable as aforesaid, the power of sale, hereinbefore given, may be exercised without notice, and that any sale or sales made under the power hereinbefore given, may be exercised without notice, and that any sale or sales made under the power hereinbefore contained shall, notwithstanding any irregularity in the exercise thereof, be held and taken to be valid, and within such power, as regards the purchaser or purchasers at such sale or sales."

No cash being paid by Northwood on this purchase, the Merchants' Bank did not release the property from the Marx mortgage. It was understood that the bank would hold the Northwood mortgage as collateral security to the Marx mortgage, with the distinct agreement that upon payment of the Northwood mortgage both mortgages were to be discharged from the lands purchased by Northwood. This agreement continued down to December 16, 1885, when the bank sold the Northwood mortgage to the plaintiff in this suit. Northwood signed the assignment of the mortgage to plaintiff. This assignment recited the aforesaid agreement, and also that Northwood desired to have the mortgage assigned to plaintiff, and to release the Merchants' Bank of Canada from its covenant to carry out such agreement; but the assignment also contained a covenant that upon payment of the mortgage debt the lands should be free from both mortgages. At this time nothing had been paid upon the mortgage.

This suit was commenced November 15, 1889, to recover from Northwood the amount due upon this mortgage. It is admitted that no payments have ever been made upon it, but the defendant claims that the lands in 1886 were taken in possession by the plaintiff, he handing the keys of the building or buildings thereon to plaintiff;

that a sale was had without notice to him, at which sale the premises brought the sum of $3,250.

The circuit judge, Hon. C. J. Reilly, of the Wayne circuit, directed a verdict for the plaintiff for the full amount of the mortgage debt and interest, to wit, $6,675.

To sustain his claim of a sale of the premises, the defendant offered in evidence a declaration filed May 4, 1888, in a suit between plaintiff and defendant, embracing the same subject-matter as the present suit, filed by Bowen, Douglas & Whiting as plaintiff's attorneys, said firm also being plaintiff's attorneys in this suit. Said declaration stated that the lands described in the mortgage were sold under the power of sale contained in said mortgage at Chatham, September 30, 1886, for the sum of $3,250, which had been applied in reduction of the mortgage indebtedness, and claimed an unpaid balance due of $3,050. He also offered Samuel T. Douglas as a witness, and proved by him the filing of this declaration, and that his firm, Bowen, Douglas & Whiting, had been employed to collect the mortgage debt of defendant; but Douglas stated on his own motion that their firm never had any authority to make any admissions for plaintiff as to the sale of this property, or any amount being realized on it by sale or otherwise, or any credits to defendant. It also appeared that the suit in which this declaration was filed was discontinued before the commencement of the present suit. The declaration was permitted to be read in evidence, subject to plaintiff's objection. The defendant then offered to prove the value of the land, that defendant did not have any notice of the sale, and what the land sold for. The testimony was excluded, and exception taken. It was then shown by the testimony of a Canadian barrister that in the case of a sale under the power of sale in the mortgage,

without notice to the mortgagor, the mortgagee, under the laws of Canada, could not maintain an action upon the covenant in the mortgage for the deficiency.

It was also shown that Crerar, Muir & Crerar were the general solicitors of the plaintiff, and the following letter from said firm to defendant was offered in evidence and excluded:

"WILLIAM NORTHWOOD, Esq.,
                              "City of Detroit:
     "As you are aware, the property situated in the town of Chatham, and described in the mortgage given by you to the Merchants' Bank of Canada, dated the eleventh day of July, 1882, and registered in the registry office for the county of Kent on the 7th of July, 1883, as No. 9,788, was offered for sale by public auction. It was not sold, however, then. It is about to be sold now to one Jacob Horatio West for $3,250.
                    "CRERAR, MUIR & CRERAR,
"Solicitors for the Assignee of the Merchants' Bank of Canada.
     "*Hamilton, November* 8, 1886."

This letter was proven to be in the handwriting of the leading member of said firm. A summons issued by the same solicitors in a suit in Hamilton, Can., and served upon defendant, was also offered in evidence. In the particulars of the claim sued upon, attached to the summons, the suit being by the plaintiff against the defendant, it appears that the action was brought upon this mortgage, less a credit of $3,250 for sale of the land. A statement of the claim, afterwards filed in this same suit, was also offered, in which the same thing appears. This suit was commenced November 5, 1886. The proffered instruments were both rejected.

It was also shown that the rental value of the property in 1884 or 1885 was $650 per annum, and that plaintiff had collected the rents since 1886. The defendant also

testified that he knew that plaintiff held a judgment against him in Canada for the amount of the mortgage, less $3,250, the sum for which the land was sold; but no showing was made of any judgment entry, or record by certified copy, or otherwise, except the statement of the defendant.

We think the letter of Crerar, Muir & Crerar should have been admitted in evidence; also the summons issued and statement of claim filed in the Canadian suit. This was some evidence tending to show a sale of the property, and whether or not, under the laws of Canada, the plaintiff could sue for the deficiency, the defendant at any rate would be entitled to a credit of the amount the land sold for. There being evidence tending to show a sale of the property, it devolved upon the plaintiff to show that there had been no sale. This was attempted, but another error was committed in admitting hearsay evidence. Marx was allowed to testify that he knew there had been no sale; that he attended at two attempts to sell, and both times no sale occurred, the property being withdrawn because the bids were inadequate; and that three months before the trial he went to the office of the plaintiff at Hamilton, and looked at the books of the plaintiff, and found there had been no sale. This last testimony was incompetent.

It is argued that, if there had been a sale of the property, the defendant could have shown such sale, and could not claim the right of going to the jury without showing it by some one who had knowledge of such sale. But the evidence whether or not there had been a sale was in the hands of plaintiff. When defendant showed papers served upon him by the general solicitors of plaintiff in a lawsuit, stating that a sale had been made, he was entitled to have the same go to the jury as admis-

86 MICH—21.

sions by the plaintiff of such sale, and it was the duty of the plaintiff to prove that these admissions were made by mistake, or that there was no authority in the solicitors to make them, and that in fact no sale had been made; and this latter fact should have been shown by competent evidence, and it was not.

Nor was it satisfactorily shown that Crerar, Muir & Crerar had no authority to make these admissions. Mr. McCoy testified that he was an inspector of the plaintiff company, and his duties were inspecting securities, and looking after the assignment of mortgages after they came into the house. He undertook to testify that, although Crerar, Muir & Crerar were the general solicitors of plaintiff, they had no authority to make admissions for the plaintiff in respect to the amount of mortgage debts; but on cross-examination it plainly appeared that all he knew about their authority was that he did not know whether they had it or not.

It was shown by a Canadian barrister that when a mortgagee takes possession of property under such a mortgage as the one in this case such mortgagee must account to the mortgagor for the rents and profits while he holds it, until the land is sold. If this is the law in Canada, then the judgment in this case is erroneous, as there has been no such accounting, or no deduction from the same on account of such rents and profits.

We also think that it was proper for the defendant to show by McCoy on cross-examination what he knew, if anything, about the suit brought in Canada, as McCoy had testified that there had been no payments upon this mortgage, or any credits. McCoy also testified that no credit had ever been given the defendant by reason of a sale of the property, but all he knew about it was that

such credit had never been entered on any of the plaintiff's books that he had seen.

The judgment is reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.